**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Sharon Harden,

      Plaintiff,

v.

State of Arizona, *et al.*,

      Defendants.

No. CV-25-04483-PHX-JJT

**ORDER**

I.    **BACKGROUND**

Plaintiff alleges that she owns or is the successor-in-interest to a residential property located in Arizona. (Doc. 1, Compl., ¶ 7.) According to Plaintiff, the State of Arizona and its officials "interfered with Plaintiff's rights to access, use, and control her private residential Property" by selling or transferring the property without a condemnation proceeding or eminent domain authority. (Compl. ¶¶ 8–9.) Plaintiff had no notice, no hearing, and was not paid just compensation for the property. (Compl. ¶¶ 10–13.)

Plaintiff sued the State of Arizona and the Arizona Attorney General's Office on December 4, 2025. She asserted claims under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment, Fifth Amendment, and equal protection clause, a claim for "abuse of authority," and violations of state law. (Compl., ¶¶ 14–19.) A few days later, she filed her Motion for Ex Parte Temporary Restraining Order and Immediate Injunction Without Notice (Doc. 9) and related memorandum (Doc. 10), which the Court denied and ordered fulsome briefing on the issue (Doc. 13). Defendants have since filed a response to

Plaintiff's Motion for Temporary Restraining Order (Doc. 18), and Plaintiff replied (Doc. 21). Defendants have also moved to dismiss Plaintiff's Complaint for lack of jurisdiction and failure to state a claim (Doc. 19), to which Plaintiff filed a response (Doc. 26) and supplemental response[1] (Doc. 24), and Defendants replied (Doc. 31).

While briefing on Defendants' Motion to Dismiss was ongoing, Plaintiff filed an Emergency Motion for Order Compelling Issuance and Recordation of Deed of Reconveyance, Quieting Title, and for Ancillary Writ of Possession (Doc. 27). She also filed her First Amended Complaint as a matter of right (Doc. 28), which the Court struck as improper pursuant to Local Rule of Civil Procedure 15.1(b) (Doc. 30). A few days later, Plaintiff filed her Motion for Leave to File Second Amended Complaint (Doc. 32), lodged her proposed amendment (Doc. 33), and filed a Notice of Filing Second Amended Complaint (Doc. 34). Three months later, Plaintiff filed a document titled "Full Redline First Amended Complaint" (Doc. 36).

## II.    PLEADING AMENDMENTS

First, the Court must resolve whether Plaintiff's recent amendments are operative. A party may amend a complaint once as a matter of course within 21 days after serving it, or within 21 days of service of, among others, a Rule 12(b)(6) motion. Fed. R. Civ. P. 15(a)(1). Otherwise, a party must obtain leave of court or the other party's consent before amending a complaint. Fed. R. Civ. P. 15(a)(2). When amending as a matter of course, the party must file a separate notice of filing the amended pleading. LRCiv 15.1(b). When amending by motion, the party must attach a copy of the proposed amended pleading as an exhibit to the motion. LRCiv 15.1(a). In either case, the party seeking an amendment must indicate "in what respect [the amended pleading] differs from the pleading which it amends, by bracketing or striking through the text that was deleted and underlying the text that was added." LRCiv 15.1.

. . .

---

[1] Plaintiff filed the supplemental response twice. (*Compare* Doc. 24 *with* Doc. 25.) For ease of reference, the Court will cite only to the first-filed supplemental response at Doc. 24.

Plaintiff seeks to file a Second Amended Complaint both by motion and as a matter of course. (*See* Docs. 32–34, 36.) Regardless of whether this Court construes Plaintiff's requested amendment as a matter of course or by motion, her filings still fail to comply with Local Rule 15.1. Plaintiff's Notice of Filing Second Amended Complaint, which was required if she sought amendment as a matter of course, does not indicate the specific changes made. (*See* Doc. 34.) Plaintiff's Motion for Leave, which was required if she sought amendment by motion, did not attach a copy of the proposed amendments indicating the changes made, either. (*See* Docs. 32–33.) The document she filed three months later that purportedly contains "redlines" shows a pleading unlike *any* of the pleadings she has filed on the record. (*Compare* Doc. 36 (purported redlines of a pleading) *with* Compl. *and* Doc 28 (stricken First Amended Complaint) *and* Doc. 33 (lodged Second Amended Complaint). Redlining a pleading that does not exist on the record does not satisfy the requirements of the local rules.

Ultimately, Plaintiff's purported amendments fail because she does not indicate how the proposed Second Amended Complaint differs from the original Complaint. Accordingly, the Court denies Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 32) for failure to comply with Local Rule 15.1. The operative complaint remains the original Complaint at Doc. 1 that names the State of Arizona and the Arizona Attorney General's Office as defendants.[2]

## III.    SUBJECT-MATTER JURISDICTION

Next, the Court considers Plaintiff's pending TRO motion (Docs. 9–10) and Defendants' Motion to Dismiss (Doc. 19). In briefing both, Defendants argue that the Court lacks subject-matter jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine. The Court must resolve this jurisdictional question before turning to Plaintiff's motion for *pendente lite* relief, as the latter issue is moot if this Court is without subject-matter jurisdiction. *Shell Offshore Inc. v. Greenpeace, Inc.*, 864 F. Supp. 2d 839, 842 (D.

---

[2] While named as defendants in later iterations of Plaintiff's pleadings, Maricopa County and the Maricopa County Sherriff's Office were not named in the operative pleading and are, therefore, not parties to this action.

Alaska 2012), *aff'd*, 709 F.3d 1281 (9th Cir. 2013) ("A district court may not grant a preliminary injunction if it lacks subject matter jurisdiction over the claim before it."); *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (per curiam) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim") (citation omitted).

"A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). "Where the jurisdictional issue is separable from the merits of the case, the [court] may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill*, 594 F.2d at 733; *see also Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) ("With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction."). The burden of proof is on the party asserting jurisdiction to show that the court has subject-matter jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). "[B]ecause it involves a court's power to hear a case," subject-matter jurisdiction "can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513–14 (2006).

The *Rooker-Feldman* doctrine provides that federal district courts lack subject-matter jurisdiction to consider an appeal from the final judgment of a state court. *Noel v. Hall*, 341 F.3d 1148, 1154–55 (9th Cir. 2003). As the Ninth Circuit has noted, the doctrine is easy to apply in its routine form; a disappointed party may not seek reversal of a state court judgment by appealing to a federal district court. *Id.* at 1155. The *Rooker-Feldman* doctrine also prohibits federal district courts from considering *de facto* appeals—suits in which "the adjudication of the federal claims would undercut the state ruling." *Bianchi v.*

- 4 -

*Rylaardsam*, 334 F.3d 895, 898 (9th Cir. 2003). Thus, *Rooker-Feldman* "looks to federal law to determine whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Id.* at 901 (citation and internal quotation marks omitted). And when refusing to consider a forbidden *de facto* appeal, a federal district court must also decline "to decide any issue in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Noel*, 341 F.3d at 1159 (citation omitted). "If a federal plaintiff has brought a de facto appeal from a state court decision—alleging legal error by the state court and seeking relief from the state court's judgment—he or she is barred by *Rooker-Feldman*." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1142 (9th Cir. 2004).

The Ninth Circuit case law illustrates the distinction between a legal wrong from "an allegedly erroneous decision by a state court," which is barred by the *Rooker-Feldman* doctrine, and "an allegedly illegal act or omission by an adverse party," which is not necessarily barred. *See Searle v. Allen*, 148 F.4th 1121, 1129 (9th Cir. 2025), *cert. denied sub nom. Roshan v. Searle*, No. 25-961, 2026 WL 1052084 (U.S. Apr. 20, 2026) (citation omitted) (collecting cases). For instance, a plaintiff is not barred from suing a defendant for engaging in fraudulent conduct that led to an adverse state court judgment, *Kougasian*, 359 F.3d at 1137–38, or challenging the constitutionality of a statute that results in ongoing injury to the plaintiff, *Maldonado v. Harris*, 370 F.3d 945, 950 (9th Cir. 2004), *Searle*, 148 F.4th at 1130, or suing for an injury stemming from distinct post-judgment actions taken by a defendant, *Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, 995 (9th Cir. 2002).

Here, Defendants argue that Plaintiff's claims fall squarely within the scope of *Rooker-Feldman* and request the Court to take judicial notice of filings from a state court probate matter related to the real property at issue in Plaintiff's Complaint. (Doc. 19 at 2–3, 6–7.) "[T]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be

questioned." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012) (citing Fed. R. Evid. 201). "We may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Id*. (citations omitted). When, as here, a party attacks subject-matter jurisdiction on the basis of the *Rooker-Feldman* doctrine, courts take judicial notice of documents from the prior state court litigation that purportedly bars the federal action. *See Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 857 & nn.1–2 (9th Cir. 2008) (taking judicial notice of state court record); *Finnegan v. City of Dana Point*, No. CV 17-976 DSF (DFMX), 2017 WL 4676583, at *1 (C.D. Cal. Aug. 2, 2017), *aff'd*, 735 F. App'x 385 (9th Cir. 2018) (same). Plaintiff does not challenge the authenticity of these records, or that they relate to the same property at issue in her Compliant. According, the Court takes judicial notice of the records provided by Defendant of the matter *In re Dorothy Jean Porter*, PB2021-003939, before the Maricopa County Superior Court of Arizona. (Docs. 19-1.)

The state court records show that the property at issue belonged at one time to Plaintiff's mother, Ms. Dorothy Jean Porter, who passed away on July 17, 2020. (Doc. 19-1 at 3.) Plaintiff applied to be appointed the personal representative of her mother's estate on August 24, 2021. (Doc. 19-1 at 3.) When she applied, Plaintiff failed to identify her mother's other children, of which there were four. (Doc. 19-1 at 3.) Plaintiff was appointed as the personal representative and she deeded the property to herself and began paying the mortgage. (Doc. 19-1 at 4.) On March 16, 2023, one of Plaintiff's mother's other children, Stanley Nicholas Wright, petitioned the state court to remove Plaintiff as the personal representative and transfer the property back to the estate. (Doc. 19-1 at 4.) In finding that Plaintiff intentionally misrepresented material facts (*i.e.*, the decedent had other interested heirs) that led to her appointment, the state court granted Mr. Wright's petition, removed Plaintiff as the personal representative, and ordered Plaintiff to transfer title of the property to the estate. (Doc. 19-1 at 5.) Plaintiff did not timely transfer title, leading the state court to hold a show-cause hearing on June 28, 2024. (Doc. 19-1 at 18–21.) At that hearing, Plaintiff signed a quitclaim deed transferring title to the estate and Mr. Wright was

appointed by the state court as the personal representative of the estate. (Doc. 19-1 at 19.) Plaintiff appealed the state court's order (Doc. 19-1 at 23–25) but that appeal was closed as abandoned (Doc. 19-1 at 27

On September 10, 2024, the state court authorized Mr. Wright to take possession of the property and ordered that Plaintiff vacate the property. (Doc. 19-1 at 29.) Plaintiff did not vacate and the state court issued a Writ of Restitution for Plaintiff's removal (Doc. 19-1 at 31–33, 40). But by then, Plaintiff recorded a separate title transfer affidavit and quitclaim deed regarding the property. (Doc. 19-1 at 42.) The state court later declared those documents void *ab initio*. (Doc. 19-1 at 42–43.) The property was eventually sold (Doc. 19-1 at 45–46), and Plaintiff's mother's estate was fully settled on December 3, 2025 (Doc. 19-1 at 48). The next day, Plaintiff sued the State of Arizona and Arizona Attorney General's Office in this Court.

Against that backdrop, it is clear that Plaintiff is a "state-court loser" seeking to undo the state court's adjudication of her mother's estate. Plaintiff alleges that the State violated her constitutional rights when its officials enforced "directives," which this Court takes to mean the state court's orders, to force Plaintiff to vacate and transfer her ownership of the property. (Compl. ¶ 9.) In other words, Plaintiff challenges the state court's orders removing her as the personal representative, removing her from the property, and approving for formal settlement of the estate, thereby depriving her of her alleged property ownership interest.

Plaintiff's briefing confirms that her claims are barred under the *Rooker-Feldman* doctrine. In responding to Defendants' Motion to Dismiss,[3] Plaintiff argues that "[t]his case arises from the unlawful seizure and dispossession [of the property] through a purported foreclosure and writ execution." (Doc. 26 at 1–2.) She asserts that her mother's estate was closed in August 2021, so the subsequent probate orders were void. (Doc. 26 at 1–2.) She

---

[3] The Court reviewed Plaintiff's supplemental response (Doc. 24) despite it being an improper sur-reply, but that brief merely sets forth Plaintiff's narrative of the actions she took as personal representative of the estate in the summer of 2021 and asserts in a conclusory fashion that she had "privileges" as the property owner. It does not meaningfully respond to any arguments raised by Defendants' motion.

contends that "unconstitutional execution or enforcement" of a state court order creates an independent injury not barred by the *Rooker-Feldman* doctrine. (Doc. 26 at 8–9.)

But Plaintiff's alleged injuries flow directly from the state court matter, and whatever deprivation that Plaintiff purports to have occurred was caused by that state court. Without that matter proceeding in the way it did, Plaintiff would not have been stripped of her personal representative authority over her mother's estate or removed from the property.

Plaintiff attempts to circumvent the *Rooker-Feldman* doctrine by asserting that the state court did not have jurisdiction to issue its judgment because the probate matter was already closed by the time Mr. Wright initiated probate proceedings. It may be that a void state court judgment does not warrant the benefit of *Rooker-Feldman*,[4] but the Court is not persuaded that the state court here lacked jurisdiction to enter its judgment. A probate proceeding is initiated by the filing of an application, which is what Plaintiff filed, or a petition for relief, which is what Mr. Wright filed, and in both instances the state court assumes jurisdiction over those matters dealing with a decedent's estate. Ariz. R. Prob. P. 3(b), 14, 15, A.R.S. § 14-1302 (endowing subject-matter jurisdiction over decedent's estates to the state court). Assuming for the moment that Plaintiff's mother's estate was closed when Plaintiff was appointed the personal representative, the effect of "closing" an estate is administrative and does not preclude an interested party from petitioning the state court for additional relief as it pertains to that particular estate. *See, e.g.*, Ariz. R. Prob. P. 51(e) (noting that administrative closure of an estate does not discharge fiduciary duties related to the estate); *see also* A.R.S. § 14-3938 (permitting subsequent administration of an estate after administrative closure). In light of the relevant probate record, it is apparent that the state court retained jurisdiction over the estate of Plaintiff's mother and, pursuant to Mr. Wright's petition for relief, took action to administer that estate pursuant to the

---

[4] This principle has not been expressly articulated but is nonetheless supported by Ninth Circuit authority. *See In re Gruntz*, 202 F.3d 1074, 1087 (9th Cir. 2000) (a state court judgment modifying a stay is void and not given effect under *Rooker-Feldman*).

applicable laws and procedures. Plaintiff points to no statute or procedural rule that convinces this Court otherwise.

Accordingly, Plaintiff's claims challenging whatever state action that was taken in and incident to the probate matter is barred under the *Rooker-Feldman* doctrine. *See, e.g.*, *Searle*, 148 F.4th at 1130–31 (claims challenging a county's issuance of a deed pursuant to a state court foreclosure judgment were barred); *Henrichs v. Valley View Dev.*, 474 F.3d 609, 614–16 (9th Cir. 2007) (claims challenging a state court's judgment quieting title were barred). Dressing her claims in constitutional garb does not remove them from the preclusive ambit of *Rooker-Feldman*. *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1142 (9th Cir. 2021) ("[T]his doctrine applies even where the challenge to the state court decision involves federal constitutional issues, including section 1983 claims.") (citation modified).

If a plaintiff fails to establish subject-matter jurisdiction, "the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010) (citation omitted). But here, any amendment would be futile. No matter how many constitutional violations Plaintiff asserts, at the heart of Plaintiff's complaints is the state court judgment. The *Rooker-Feldman* doctrine will preclude those claims. *See Watkins v. Proulx*, 235 F. App'x 678, 679 (9th Cir. 2007) ("Because [the plaintiff's] action is barred by *Rooker-Feldman*, amendment of his complaint would have been futile."); *Spell v. Cnty. of Los Angeles*, No. 2:19-06652 FMO (ADS), 2019 WL 7404830, at *7 (C.D. Cal. Nov. 6, 2019), *report and recommendation adopted*, No. 2:19-06652 FMO (ADS), 2019 WL 7403654 (C.D. Cal. Dec. 30, 2019). Accordingly, the Court dismisses these claims without leave to amend.

Because the Court lacks subject-matter jurisdiction over Plaintiff's instant claims, the Court also lacks authority to enter a temporary restraining order, preliminary injunction,

or other forms of emergency relief based on those claims and will deny Plaintiff's motions (Docs. 9, 27) as moot.

**IT IS ORDERED** denying Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 32).

**IT IS FURTHER ORDERED** denying as moot Plaintiff's Motion for Ex Parte Temporary Restraining Order and Immediate Injunction (Doc. 9).

**IT IS FURTHER ORDERED** denying as moot Plaintiff's Emergency Motion for Order Compelling Issuance and Recordation of Deed of Reconveyance, Quieting Title, and for Ancillary Writ of Possession (Doc. 27).

**IT IS FURTHER ORDERED** granting Defendants' Motion to Dismiss (Doc. 19).

**IT IS FURTHER ORDERED** dismissing Plaintiff's Complaint for Violations of Civil Rights [42 U.S.C. § 1983] and Related Claims (Doc. 1) without leave to amend. The Clerk of Court shall enter Judgment accordingly and terminate this matter.

Dated this 18th day of June, 2026.

Honorable John J. Tuchi
United States District Judge

- 10 -